IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT S. SEGAL,

      Plaintiff,

v.                                    Civil Action No. 1:20-CV-267
                                        Judge Kleeh

DINSMORE & SHOHL, LLP, an
Ohio limited liability partnership,
DAVID M. THOMAS, JEREMY S.
ROGERS, ROBERT PALUMBI and
JOHN J. BERRY,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS

Pending before the Court is Defendants' Motion for Summary Judgement [ECF No. 31]. That motion is fully briefed and ripe for decision. For the reasons discussed herein, the Court **GRANTS** that motion. The other pending motions are addressed as well.

### I.   PROCEDURAL HISTORY

Plaintiff Scott S. Segal filed his Complaint on December 7, 2020. ECF No. 1. There, Plaintiff asserted numerous claims against Defendants Dinsmore & Shohl, LLP, David M. Thomas, Joshua S. Rogers, Robert M. Palumbi and John J. Berry. Specifically, Plaintiff alleges legal malpractice against all Defendants (Count I), negligence against all Defendants (Count II), fraud against Defendants Dinsmore & Shohl and Thomas (Count III), breach of fiduciary duty against all Defendants (Count IV) and tortious

Segal v. Dinsmore, et al.                                          1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

interference with business relations against Defendants Dinsmore & Shohl, Thomas and Rogers (Count V).  Id.  Defendants filed their Motion to Dismiss in response on February 19, 2021.  ECF No. 3. The Court denied that motion on September 30, 2021.  ECF No. 19. Defendants answered the Complaint on November 4, 2021.  ECF Nos. 23-27.  The Court entered its Scheduling Order on January 12, 2022. ECF No. 28.  Among the deadlines established, Plaintiff was required to make his expert witness disclosures on or before March 1, 2022 and Defendants' disclosures were due on or before April 1, 2022.  Id.  Plaintiff made no such disclosure.  Defendants disclosed their expert witnesses on April 1, 2022.  ECF No. 30.

Defendants timely filed their pending joint motion for summary judgment on May 31, 2022.  ECF No. 31.  Plaintiff filed a Motion for Stay, or in the alternative, for Continuance, and Opposition to Motion for Summary Judgment on June 21, 2022.  ECF No. 35.  Defendants filed their joint response to that motion and reply in support of their summary judgment motion on July 5, 2022. ECF No. 37.  After filing their dispositive motion, Defendants served "renewed" discovery requests on June 1, 2022.  ECF No. 33.

Thereafter, the parties filed their pretrial documents – motions in limine, jury instructions, proposed voir dire and proposed verdict forms.  The Court sua sponte continued the

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

pretrial conference and jury trial to consider the pending motions. This Order addresses each of them.

## II. FACTUAL BACKGROUND

Plaintiff Scott S. Segal ("Segal") alleges Defendant law firm Dinsmore & Shohl, LLP ("Dinsmore") served as his attorneys for more than 15 years. Compl., ECF No. 1, at ¶ 2. Defendants David M. Thomas ("Thomas"), Joshua S. Rogers ("Rogers"), Robert M. Palumbi ("Palumbi") and John J. Berry ("Berry") are all lawyers with Dinsmore. Id. at ¶¶ 6, 7, 8, 9. Segal alleges Dinsmore "secretly maneuvered" to deprive Segal of over $20 million in collateral and $3 million in loan guarantees. Id. at ¶ 2. Thereafter, he alleges Dinsmore "tricked" him into permitting the law firm to represent another client – for whom the "maneuvering" was done – in suing Segal, including claims for fraud and punitive damages. Id. Segal claims this damaged his reputation and, by extension, his law practice. Id. Segal alleges he only learned of Dinsmore's alleged chicanery during that litigation. Id. at ¶ 3.

Dinsmore and some of its lawyers served as Segal's counsel for employment matters for over 15 years. Id. at ¶¶ 13 and 14. He paid Dinsmore more than $49,000 in legal fees over that time. Id. at ¶ 16. Segal alleges this attorney-client relationship

Segal v. Dinsmore, et al.                                    1:20-CV-267

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS

permitted Dinsmore to learn confidential information about him
including financial details.  Id. at ¶ 17.

        While he was a client of Dinsmore on unrelated matters, Segal
invested in a now-defunct biotechnology company, Protea
Biosciences, Inc.  Id. at ¶ 18.  Milan Puskar ("Puskar") also
invested and served on Protea's board of directors.  Id. at ¶
20.  When Protea needed a capital infusion, Puskar recommended the
company secure a loan from Centra Bank ("Centra").  Id. at ¶¶ 21,
22.  Puskar was a founding director and a large shareholder in
that bank.  Id. at ¶ 22.  On August 27, 2009, Protea entered into
a $3 million Commercial Loan Agreement with Centra.  Id. at ¶
23.  Between August and September 2009, Segal, Puskar and other of
Protea's directors signed personal guarantees for portions of the
loan from Centra.  Id. at ¶ 24.

        In the fall of 2010, Centra was in negotiations to sell its
assets and operations to United Bank.  Id. at ¶ 27.  Prior to that
development becoming public, Puskar executed a guaranty agreement
("Puskar Guaranty") where The Milan Puskar Amended and Restated
Trust ("Puskar Trust"), of which Puskar served as trustee,
guaranteed the entirety of the loan from Centra Bank.  Id. at ¶
30.  The Puskar Guaranty was secured by 500,000 shares of stock in
Mylan Laboratories, Inc. ("Mylan") which had a value of more than
$10 million at the time it was posted.  Id. at ¶ 32.  Segal alleges

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

Dinsmore provided legal services to the Puskar Trust since its inception. Id. at ¶ 31.

Segal claims "the entire purpose" of the Puskar Guaranty was to "shield" other investors, including himself, from any personal liability if Protea ever defaulted on the $3 million loan. Id. at ¶ 33. Allegedly, Puskar himself declared this intent to "numerous individuals." Id. Puskar passed away on October 7, 2011. Id. at ¶ 35.

By early 2017, Protea began to experience financial difficulties. Id. at ¶ 36. By the same time, however, the value of the Puskar Guaranty collateral - the Mylan stock - had significantly appreciated in value with the potential for "substantial further appreciation." Id. at ¶ 37. Considering these factors, Segal claims, the Puskar Trust became concerned Protea would default enabling the noteholder, United Bank, to liquidate a portion of the guaranty collateral. Id. at ¶ 38.

Segal alleges Dinsmore "devised a scheme" to enable the Puskar Trust to avoid its guaranty obligations. Id. at ¶¶ 39, 40. He claims Dinsmore advised the Puskar Trust to form a separate entity, a limited liability company, to purchase the note from the bank which would transfer all guaranties and control of all collateral including the Mylan stock to that limited liability company. Id. at ¶ 41. This "scheme" commenced with the creation of PITA, LLC

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

("PITA") on November 21, 2017.  Id. at ¶ 42.  The Puskar Trust is
the only member of PITA.  Id. at ¶ 45.  Like the Puskar Trust,
Dinsmore has represented PITA since its inception.  Id. at ¶
46.  Defendant Jeremy S. Rogers, a Dinsmore lawyer, organized PITA
and Kyle Pratt, Puskar's grandson and a trustee of the Puskar
Trust, serves as its manager.  Id. at ¶ 43.  Segal claims PITA was
created solely to serve as a vehicle to purchase the assignment of
the note and the supporting collateral Mylan stock to transfer the
valuable stock back to the Puskar Trust.  Id. at ¶ 47.  PITA
purchased the note on November 21, 2017 for $3,026,904.16, which
sum Segal alleges was funded by the Puskar Trust.  Id. at ¶¶ 48,
49.  Dinsmore handled that transaction as counsel.  Id. at ¶ 50.

One day after acquiring the note, PITA advised the bank it
wished to release the entire security interest in the loan's
collateral and that the Mylan stock should be returned to the
Puskar Trust.  Id. at ¶ 52.  As the Complaint alleges, PITA did
not seek satisfaction of the note by executing on the collateral
or making a demand on the Puskar Trust prior to releasing the
collateral back to the Trust.  Id. at ¶¶ 51, 53.  Segal claims
these actions, much to his detriment, exposed him to liability
that would not have otherwise existed had the Puskar Trust (and
PITA) adhered to Puskar's stated wishes.  Id. at ¶ 54.  He also

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

alleges Dinsmore advised PITA on these matters, again to his detriment despite being a client of the firm.  <u>Id.</u> at ¶ 55.

Protea filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of West Virginia on December 1, 2017.  <u>Id.</u> at ¶ 56.  Segal alleges PITA continued to assert Protea and the loan guarantors, including Segal, owed in excess of $3 million on the loan despite holding both the Puskar Guaranty and Mylan Stock collateral.  <u>Id.</u> at ¶ 57.  Shortly after the bankruptcy filing, PITA and the Puskar Trust retained Dinsmore to represent them in an action to recover the outstanding balance of the loan.  <u>Id.</u> at ¶ 58.

Subsequently, Dinsmore contacted Segal's personal attorney seeking a waiver from Segal to permit Dinsmore to represent PITA and the Puskar Trust in recovering on the loan.  <u>Id.</u> at ¶ 59.  The Complaint alleges this would make Dinsmore directly adverse to its other client, Segal.  <u>Id.</u>  That request was followed up in writing with a letter and waiver.  According to the Complaint, neither the letter nor any other communication advised Segal or his counsel PITA and the Puskar Trust released the loan collateral back to the Trust with Dinsmore's assistance.  <u>Id.</u> at ¶¶ 60, 61.  Segal further alleges Dinsmore never informed him they had represented the Puskar Trust in its acquisition of the loan, the release of the collateral or the decision to forego pursuing the Puskar Guaranty – all

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

actions detrimental to Segal.  Id. at ¶ 62.  Nor did they advise

Segal Dinsmore planned to file the suit against him to collect

"***more than*** his pro rata share of the outstanding balance of the

Loan."  Id. at ¶ 63 (emphasis in original).  The written

communications were likewise silent as to the specific claims to

be asserted against Segal including the fraud and punitive damages

claims eventually asserted in Monongalia County Circuit

Court.  Id. at ¶¶ 64, 65.  Negotiations ensued over the language

of the waiver while, Segal alleges, Dinsmore never disclosed any

of these facts to him.  Id. at ¶¶ 66, 67.  Regardless, after some

negotiation and fine-tuning, Segal signed the waiver.  Id. at ¶¶

66, 68.

Dinsmore, as counsel for PITA and the Puskar Trust, filed

suit against Segal and others in the Circuit Court of Monongalia

County, West Virginia, as Civil Action 18-C-372, on September 4,

2018.  Id. at ¶ 69.  Segal alleges that had Dinsmore disclosed its

involvement in PITA and the Puskar Trust's business and the

specifics of the litigation he would have rejected the conflict

waiver request.  Id. at ¶¶ 77, 78, 79.  The Complaint also alleges,

"as a result of the tortious conduct of Dinsmore and the individual

Defendants," Segal has suffered damages including "great

reputational damage," substantial legal fees, compromised legal

**Segal v. Dinsmore, et al.**                                              **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

and financial positions and the loss of personal time.  Id. at ¶ 80.

Specifically, Segal asserts claims for Legal Malpractice (Count I) against all Defendants, Negligence (Count II) against all Defendants, Fraud (Count III) against Dinsmore and Thomas, Breach of Fiduciary Duty (Count IV) against all Defendants and Tortious Interference with Business Relations (Count V) against Dinsmore, Thomas and Rogers.  Id. at ¶¶ 81-104.  For each of those claims, Segal alleges he has suffered damages including legal fees, unwarranted injury to his reputation, annoyance and inconvenience and loss of time that could have been dedicated elsewhere including other business pursuits.  Id. at ¶¶ 84, 88, 95, 99, 104.  He also claims damages in the form of a loss of contribution from the Puskar Trust under the Puskar Guaranty and potential exposure of financial losses beyond a pro rata share on the loan.  Id. at ¶ 104.  Segal specifically seeks relief for compensatory damages, annoyance and inconvenience, punitive and exemplary damages, attorney's fees and costs and interest.  Id.

Through discovery, the following facts have been conclusively established pursuant to Federal Rule of Civil Procedure 36(b):

1. Segal signed the Personal Guaranty attached to Defendants' Motion to Dismiss as Exhibit 4 on September 28, 2009;

2. The Guaranty guaranteed $1 million of the Protea Note loan;

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

3. The Dinsmore firm did not handle any matters for Segal
   personally from March 2006 to July 2018;

4. Segal was represented by David L. Fuchs when PITA notified
   Segal on December 8, 2017, that Protea was in default and
   inquired as to Segal's intentions under the Personal
   Guaranty he previously executed;

5. Segal was represented by Fuchs when Defendant David Thomas
   sent him a letter on January 5, 2018 identifying a
   potential conflict of interest involving Segal and the
   Dinsmore firm and also represented Segal during the
   conflict waiver negotiations that resulted in an executed
   conflict waiver on February 9, 2018;

6. Defendant Robert Palumbi sent Segal and his counsel Fuchs
   a letter dated August 24, 2018 which included a copy of
   the complaint to be filed in the Circuit Court of
   Monongalia County, West Virginia, prior to the complaint
   being filed;

7. Segal intended to honor his obligations under the Personal
   Guaranty when he signed that document; and,

8. Segal signed the February 9, 2018 conflict waiver in which
   he agreed not to object to Dinsmore's representation of
   PITA, the Puskar Trust, or their affiliates with respect
   to the Protea Note.

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

ECF No. 31-1 pp.13–14.[1]

### III. APPLICABLE STANDARDS

**A. Rule 56**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for

---

[1] Dinsmore served its First Set of Discovery Requests on February 24, 2022 which included Requests for Admission under Rule 36 of the Federal Rules of Civil Procedure. Prior to responses coming due, counsel reached an agreement via email to a two-week extension for Segal to respond. No responses were filed after expiration of that extension including to date. See ECF No. 32 at 4. The Requests for Admission are therefore deemed admitted. See Fed. R. Civ. P. 36(a)(3); Weva Oil Corp. v. Belco Petroleum Corp., 68 F.R.D. 663, 666 (N.D.W. Va. 1975) (internal citations omitted).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

This Court has previously summarized the burden imposed on parties opposing a summary judgment challenge.

> However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950)).
>
> In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

> there is indeed a genuine issue for trial.
> Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S.
> at 323-25; Anderson, 477 U.S. at 248. "If the
> evidence is merely colorable, or is not
> significantly probative, summary judgment may
> be granted." Anderson, 477 U.S. at 249
> (citations omitted).

Watson v. Warden, FCI Hazelton, Civil Action No. 2:16-CV-76, 2017
WL 1955532, at *2 (N.D.W. Va. May 11, 2017) (Bailey, J.). The Court
views the evidence in the light most favorable to Plaintiff, the
non-moving party, and draws any reasonable inferences in
Plaintiff's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell,
652 F.3d 524, 531 (4th Cir. 2011) (en banc).

The burden imposed on a party resisting a summary judgment
challenge has been made clear; however, a party seeking summary
judgment is not automatically entitled to such relief if a non-
movant fails to respond.

> Section (c) of Rule 56 requires that the
> moving party establish, in addition to the
> absence of a dispute over any material fact,
> that it is "entitled to a judgment as a matter
> of law." Fed. R. Civ. P. 56(c). Although the
> failure of a party to respond to a summary
> judgment motion may leave uncontroverted those
> facts established by the motion, the moving
> party must still show that the uncontroverted
> facts entitle the party to "a judgment as a
> matter of law." The failure to respond to the
> motion does not automatically accomplish this.
> Thus, the court, in considering a motion for
> summary judgment, must review the motion, even
> if unopposed, and determine from what it has
> before it whether the moving party is entitled

13

Segal v. Dinsmore, et al.                                1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

> to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, "if the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R.Civ. P. 56(e) (emphasis added).

Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

**B.   Rule 36**

Rule 36 of the Federal Rules of Civil Procedure governs the scope and procedure for written requests for admissions. Rule 36(a)(3) provides, in part, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).  "[T]he 'sanction for failure to respond to a request for admission is self executing.'" Precision Franchising, LLC v. Gatej, No. 1:12CV158 JCC/TCB, 2012 WL 6161223, at *5 (E.D. Va. Dec. 11, 2012) (quoting Hill v. Laury, No. 3:06CV79, 2006 WL 2631796 (E.D. Va. Sept. 13, 2006)).  "It is well established that failure to respond to requests for admission is deemed to be an admission of the matters set forth." Weva Oil Corp., 68 F.R.D. at 666.  "This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." Am. Auto. Ass'n (Inc.) v. AAA Legal

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120-21 (5th Cir. 1991). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36.

Courts in both districts in West Virginia have recognized the significance and conclusiveness of admitted matters at summary judgment stage. "[U]nanswered requests for admission render the matter requested conclusively established for the purpose of that suit and . . . a summary judgment may be based on admitted matter." Weva Oil Corp., 68 F.R.D. at 667. "[A]dmissions obtained under Rule 36, including matters deemed to be admitted by a party's failure to respond to a request for admissions, can form the basis for granting Summary Judgment." Gardner v. Borden, Inc., 110 F.R.D. 696, 697 (S.D.W. Va. 1986) (Haden, C.J.) (internal quotations, citations and subsequent history omitted).

## IV. DISCUSSION

### A. Statute of Limitations

Defendants' motion initially is based on the applicable statute of limitations, an affirmative defense.[2] "Ordinarily, a

---

[2] Defendants further urge the Court to grant them summary judgment because Plaintiff failed to disclose a liability expert witness, a condition precedent, Defendants argue, to successfully

Segal v. Dinsmore, et al.                                   1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

defense based on the statute of limitations must be raised by the defendant through an affirmative defense, see Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007); see also Syl. Pt. 2, Coffield v. Robinson, 857 S.E.2d 395, 396 (W. Va. 2021). "A defendant is entitled to Summary Judgment upon the basis of an affirmative defense . . . that does not involve a triable issue of fact." Jackson v. Riley Stoker Corp., 57 F.R.D. 120, 122 (E.D. Pa. 1972) (citation omitted).

W. Va. Code § 55-2-12 provides "[e]very personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]". Under West Virginia law, a legal malpractice claim may sound in either tort or contract. See Harrison v. Casto, 271 S.E.2d 774, 776 (W. Va. 1980).

There is no suggestion in either the Complaint, the parties' summary judgment briefing or the record before the Court that Plaintiff's malpractice claim is anything but a tort claim. The

---

prosecuting a legal malpractice claim. Defendants further contend Plaintiff's other claims, largely derivative of the malpractice theory, would also require expert testimony. Because the Court finds Plaintiff's claims time-barred, it will not assess whether the lack of an expert witness is likewise fatal to Plaintiff's claims given Defendants' summary judgment challenge.

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

other claims, in particular the fraud claim, further establish this fact and the Court has not been provided any document purporting to be an acknowledgment or contract of representation, fee schedule or the like between Segal and the Dinsmore firm. Thus, the Court will assess Defendants' statute of limitations defense to the legal malpractice claim under the two-year tort claim period. Plaintiffs' other claims for negligence, breach of fiduciary duties, fraud and tortious interference with business relations are also subject to the same two-year statute of limitations period. See Evans v. United Bank, Inc., 775 S.E.2d 500, 508 (W. Va. 2015) ("It is undisputed that the underlying statute of limitations for Petitioners' . . . negligence, . . . breach of fiduciary duty, and constructive fraud claims is two years."); Kessel v. Monongalia Cnty. Gen. Hosp. Co., 600 S.E.2d 321, 328 n.10 (W. Va. 2004) ("Therefore, the two-year statute of limitations governing actions for damage to property, set forth under W. Va. Code, 55-2-12, applies to an action for tortious interference with business relationship.").

The Supreme Court of Appeals of West Virginia has provided trial courts with a detailed road map in assessing whether a statute of limitations bars a civil action as untimely.

> A five-step analysis should be applied to determine whether a cause of action is time-

17

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 4, Evans, 775 S.E.2d at 501.

The Court has already identified the applicable statute of limitations for each of Plaintiff's claims – legal malpractice, fraud, breach of fiduciary duty and negligence. The traditional two-year tort limitations period applies here. The Evans court is quite clear the remaining steps of the analysis "generally involve

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

questions of material fact"; however, that is not the case here as Plaintiff has admitted to the operative facts relevant to Defendants' statute of limitations defense. Moreover, to the extent necessary, this Court takes judicial notice of the date Defendants sued Plaintiff on behalf of another of the Dinsmore firm's clients – September 4, 2018 - and the nature of those allegations. "Certainly, 'courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.'" In re Under Armour Sec. Litig., 409 F. Supp. 3d 446, 456 (D. Md. 2019) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (citations omitted)).

The second task facing the Court is to ascertain when the causes of action accrued. Segal has admitted he knew PITA had purchased the Protea Note and PITA was seeking payment from the guarantors on December 8, 2017. ECF No. 31-1, Req. Admis. ¶ 4. Moreover, Dinsmore provided notice of its conflict of interest in representing PITA, the Trust and Segal by January 5, 2018. Id. ¶ 5. There is no doubt the conflict was expressly broadcast by February 9, 2018 when Dinsmore requested a conflict waiver from Segal. Id. Fuchs represented Segal during the waiver negotiations

**Segal v. Dinsmore, et al.**                                        **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

and execution.  Id.  Dinsmore, despite still representing Segal,[3] sent Segal and his personal counsel an August 24, 2018 letter enclosing a courtesy copy of a civil complaint asserting claims on behalf of PITA against Segal.  Id. ¶ 6.  Dinsmore, despite still representing Segal, filed suit against him and the other guarantors on behalf of PITA in the Circuit Court of Monongalia County, West Virginia on September 4, 2018.  The undisputed facts establish Segal's causes of action accrued, at the latest, on September 4, 2018.

Next, the Court must apply the discovery rule to determine when the statute of limitations period began to run.  That is, the Court must determine when Segal knew or, by exercise of due diligence, should have known, the elements of possible causes of action existed.  See id.

"In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the

---

[3] Nothing in the record supplied to the Court indicates Dinsmore ever terminated its representation of Segal.

**Segal v. Dinsmore, et al.**                                      **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

conduct of that entity has a causal relation to the injury." Syl. Pt. 4, Gaither v. City Hosp., Inc., 487 S.E.2d 901, 903 (W. Va. 1997).

> Under the discovery rule set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

Syl. Pt. 4, Dunn v. Rockwell, 689 S.E.2d 255, 258 (W. Va. 2009).

Applying this objective standard to the established record in this case, the Court is left with no alternative conclusion other than Segal knew the elements of his causes of action existed by September 4, 2018 at the absolute latest. On this date, Segal's own lawyers at the Dinsmore firm sued him. The record also establishes that, through the exercise of due diligence, Segal should have known much earlier that his law firm was taking a position in conflict with him on behalf of individuals or entities whose interests were not aligned with his. Plaintiff's Complaint proves the point. He refers to the West Virginia Secretary of State's website in alleging Defendant Rogers served as PITA's organizer with the same address as Dinsmore's Morgantown office.

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

ECF No. 1 at ¶¶43-44. Plaintiff also alleges PITA's manager is Puskar's grandson who also serves as one of the Trust's trustees. Id. Those individuals and entities, arguably, stood to benefit the most from Segal honoring – whether voluntarily or otherwise – his personal guaranty. Dinsmore asked for a conflict of interest waiver from Segal in February 2018. Dinsmore provided notice of its conflict to Segal in January 2018. Going even further back, Segal has admitted he knew of PITA's purchase of the Protea note, a note for which Segal signed a personal guarantee, in December 2017. Each of these incidents would have prompted any reasonable person to conduct further investigation or inquiry as to the actions of his or her law firm or the holder of a note to which he or she owed significant personal liability. Even the most cursory inquiry or investigation would have further revealed the factual basis Segal relies upon in bringing his claims here.

Regardless, the undisputed facts establish Segal knew his causes of action accrued by September 4, 2018 at the latest when his lawyers, as the Dinsmore firm was, sued him on behalf of an entity Dinsmore helped form. He should have known, upon exercise of due diligence, that his claims arose by December 2017 at the earliest. Either date, absent tolling, makes Plaintiff's December

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

7, 2020 filing date of his Complaint against Defendants untimely
under the applicable two-year statute of limitations.

Having concluded the discovery rule affords Segal no
protection from application of the two-year statute of limitation,
the Court next turns to the fourth step of the Evans analysis.
The Court finds no evidence in the record of fraudulent concealment
sufficient to toll the statute of limitations period.  To the
contrary, Defendants telegraphed their potential conflict and
actions to Segal and his counsel.  After Segal knew of PITA's
purchase of the Protea note, Defendants advised Segal and his
counsel of their "potential" conflict of interest via letter dated
January 5, 2018.  Negotiations ensued when Segal, with the
assistance of counsel, signed a conflict waiver on February 9,
2018.  Then, Defendant Palumbi sent Segal and his counsel a letter
enclosing the complaint Dinsmore intended to file in the Circuit
Court of Monongalia County on August 24, 2018, shortly before PITA
asserted its claims against Segal, among others, in that
jurisdiction on September 4, 2018.

In his Complaint, Plaintiff alleges he only learned of
significant underlying facts in support of his causes of action
through discovery in the Monongalia County PITA litigation.  The
Complaint is silent as to what Plaintiff uncovered or learned

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

during that discovery process.  Moreover, his response to Defendants' summary judgment motion maintains that silence.  The record before this Court has been "conclusively established" through targeted and specific requests for admission.  As this Court foretold in its Order denying Defendants' motion to dismiss, the time for mere allegations and plausibility has passed.  ECF No. 19 at 16 ("Of course, Plaintiff's burden transforms as this litigation progresses and mere allegations will no longer be sufficient either at summary judgment stage or trial." (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1133 (4th Cir. 1993) ("We caution, however, that a claim held not dismissible at the Rule 12(b)(6) level must eventually still be proven.")).  In his response to the summary judgment motion, Plaintiff advocates for a stay because such relief would "moot" Defendants' motion.  ECF No. 35 at 5.  That request, which mirrors Defendants' previously denied motion for stay, overlooks the self-executing nature of Rule 36 and minimizes the obligations imposed upon a non-movant under Rule 56.  Plaintiff has failed to sustain his burden under Rule 56 when faced with a properly supported motion for summary judgment.[4]

---

[4] Like the lack of motion for relief under Rule 36, discussed infra, Plaintiff has likewise failed to cite, move, or rely on the clear

Segal v. Dinsmore, et al.                                   1:20-CV-267

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS

Lastly, under Evans, the Court is required to determine if any other tolling doctrine applies. Plaintiff points to no other potential basis the statute of limitations period should be tolled. The Court cannot identify one on its own. Thus, the two-year period was not tolled at any point.

At a minimum, Segal knew of his potential legal malpractice and negligence claims against Defendants on September 4, 2018 when a law firm that had represented him for fifteen (15) years sued him personally. Construing the undisputed facts in a light most favorable to Segal, he should have known the elements for his legal malpractice and negligence claims existed when he and his counsel received the August 24, 2018 letter enclosing the to-be-filed

procedural path proscribed under Rule 56. Plaintiff's response to the summary judgment motion avers, without affidavit or declaration citing specific facts or determinations necessary but unavailable to adjudicate his claims here or even Defendants' dispositive motion, resolution of PITA's claims against Plaintiff is a necessary prerequisite before this case can proceed. See Fed. R. Civ. P. 56(c). Plaintiff, like Defendants have depending on the procedural posture of this case and their perceived benefit at the time, has taken diametrically opposing positions on the propriety of a stay of this case pending the Monongalia County litigation. Given, inter alia, the shifting positions of the parties, the Court declines once again to stay this matter pending the anticipated lengthy appellate resolution of the PITA litigation. As detailed at length in this Order, the facts relevant to Defendants' summary judgment motion have been conclusively established and final adjudication of the Monongalia County matter is not necessary to resolution of this matter's statute of limitations questions.

**Segal v. Dinsmore, et al.**                                     **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

complaint.  The same conclusion applies to Segal's fraud tortious interference with business relations and breach of fiduciary duty claims.  Segal, by his own admission, knew PITA purchased the Protea note on December 8, 2017 – a note which Segal personally guaranteed for $1 million.  He was advised of Defendants' potential conflict of interest related to PITA, the Puskar Trust and Segal on January 5, 2018. All of these undisputed facts would have led any reasonable person exercising due diligence that the basis for fraud, breach of fiduciary duty and tortious interference claims existed when Defendants threatened to sue on August 25, 2018 and then sued their firm's client Segal on September 4, 2018.  By either measure, Segal's December 7, 2020 Complaint initiating this civil action was filed beyond the required two-year statute of limitations period for each of his claims.

"The ultimate purpose of statutes of limitations is to require the institution of a cause of action within a reasonable time." Syl. Pt. 2, Perdue v. Hess, 484 S.E.2d 182, 182 (W. Va. 1997). "[S}tatutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception."  Id. at 186 (internal quotations and citations omitted).  Exceptions to statutes of limitations are "strictly construed."  Syl. Pt. 3, Hoge v. Blair, 141 S.E. 444 (W.

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

Va. 1928).  No exception has been identified let alone supported by the record evidence. Plaintiff's claims were untimely brought. Having found no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law on the statute of limitations, the summary judgment motion is **GRANTED**.

### B. Requests for Admission

The Court's conclusion that each of Plaintiff's claims are time-barred by the two-year statute of limitations is based, largely, on Segal's admissions.  As noted, no responses to Defendant's Rule 36 Requests for Admission were ever served.  Thus, each of those requests are deemed admitted and conclusively established by operation of rule.  Rule 36 is quite clear that that Court can only permit a party to amend or withdraw a response to a request for admission **upon motion**.  See Fed. R. Civ. P. 36(b). No motion seeking such relief is pending before the Court.  Nor did Plaintiff file any untimely responses.  Courts have treated untimely responses as the functional equivalent of a motion to withdraw under Rule 36. See Medpath, Inc. v. Modern Medicine, 934 F.2d 319, *2 (4th Cir. 1991) (unpublished) (citing favorably Gutting v. Falstaff Brewing Corp., 710 F.2d 1309, 1312 (8th Cir. 1983)).  Neither procedural gambit is before the Court here.

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

Instead, in response to Defendants' summary judgment motion, Plaintiff filed his Motion for Stay or, in the Alternative, for Continuance and Opposition to Motion for Summary Judgment. [ECF No. 35]. That submission is devoid of any citation to legal authority or invocation of any rule. Plaintiff focuses on counsel's work in other cases and decries Defendants' pending motion as a "discovery sanction" too extreme for this case. Although the lack of motion or other filing under Rule 36 would relieve this Court of undertaking a full analysis of any relief due Plaintiff, the Court examines the standard it would have to apply had Plaintiff complied with applicable procedure out of an abundance of caution and in the interest of judicial economy.

Withdrawal or amendment of admissions is subject to the court's discretion, if such alteration "would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining . . . the action on the merits." Fed. R. Civ. P. 36(b). Plaintiff has not addressed either prong in his submission; however, the Court does not believe Plaintiff would prevail on either one. The requests for admission that establish the operative facts for Defendants' statute of limitations defense are not merely a boilerplate recitation of the essential elements of

**Segal v. Dinsmore, et al.**                                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

Plaintiff's claims.  Instead, the requests were discreet facts focused on specific dates communications occurred.  For example, Plaintiff admitted he was represented by Mr. David L. Fuchs when Defendant David Thomas sent a letter on January 5, 2018, identifying a potential conflict of interest involving Segal and Dinsmore, and represented Segal during the conflict waiver negotiations that resulted in an executed conflict waiver on February 9, 2018.  ECF 31-1 at 13.  The varying dates of communications, some of which were in writing, established from the Requests for Admission are critical to Defendants' statute of limitations defense and appear indisputable even without the admissions.  The same applies to the September 4, 2018 date Dinsmore sued its client Segal in the Circuit Court of Monongalia County, West Virginia.  In other words, resolution of the merits as it pertains to the onset of the statute of limitations period would not be fostered if the admissions were considered withdrawn. This factor therefore weighs heavily against excusing Plaintiff from operation of Rule 36.

Although unnecessary considering that conclusion, the Court further finds Defendants would be prejudiced if the admissions were permitted to be withdrawn.  A party's reliance on deemed admissions in preparing a summary judgment motion is not sufficient

Segal v. Dinsmore, et al.                                   1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

alone to constitute the requisite prejudice under Rule 36(b). See Precision Franchising, LLC v. Gatej, No. 1:12cv158, 2012 WL 6161223, at *7 (E.D. Va. Dec. 11, 2012) (citation omitted). Here, Defendants had secured admissions to critical chronological facts after providing an extension for Plaintiff's counsel to respond. ECF No. 32 at 4; ECF No. 37 at 3. Thereafter, on April 1, 2022, Defendants also retained and disclosed their expert witness. ECF No. 30. After nearly two months, and in obvious reliance on both those admissions and the Court's Scheduling Order, Defendants filed the instant motion. Defendants noticed Plaintiff's deposition while discovery was ongoing under the Court's Scheduling Order. ECF No. 34. However, after filing his Motion to Stay, Plaintiff advised he would not appear for his deposition and Defendants cancelled the otherwise properly noticed deposition. ECF No. 40 at 3, 34. Permitting withdrawal of the admissions at this point would require Defendants to start anew with discovery after they initiated such efforts in compliance with the schedule in place[5] and would reward Plaintiff for failing

---

[5] Defendants, in addition to the Requests for Admission, also served interrogatories and requests for production upon Plaintiff on February 24, 2022. ECF No. 29. Plaintiff responded to none of these discovery requests. The Requests for Admission, as noted, were deemed admitted by operation of rule. Defendants failed to seek relief from the Court for the remaining outstanding discovery requests. Under this Court's Local Rules, their right to relief

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

to engage in discovery as initially plotted or for more timely seeking amendment to the Court's scheduling order.  The Court finds Defendants would be prejudiced at this juncture which represents a separate and independent basis to deny any request to withdraw the admissions under Rule 36.

When assessing whether to permit withdrawal of conclusive admissions under Rule 36, "it is important to reiterate that there is absolutely no right to withdraw admissions and withdrawal is at the discretion of the court." Adventis, Inc. v. Big Lots Stores, Inc., No. 7:02CV00611, 2006 WL 2631760, at *2 (W.D. Va. Sept. 11, 2006) (internal quotations and citations omitted).  "[T]he decision to allow a party to withdraw its admissions is quintessentially an equitable one, balancing the rights to a full trial on the merits, including the presentation of all relevant evidence, with the necessity of justified reliance by parties on pretrial procedures and finality as to issues deemed no longer in dispute." Id.  Even if a more appropriate procedural vehicle was

---

was waived.  LR Civ. P. 37.02(b).  Defendants then served **another** set of identical interrogatories and requests for production of documents on June 1, 2022.  ECF No. 33.  When those also went unanswered, Defendants timely filed their Motion to Compel ECF No. 40.  Given the Court's ruling on the summary judgment motion, the Court need not address Defendants' gamesmanship of the Federal Rules of Civil Procedure and this Court's Local Rules.  The Motion to Compel [ECF No. 40] is **DENIED AS MOOT.**

**Segal v. Dinsmore, et al.**                                    **1:20-CV-267**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

used putting the question squarely before this Court, the record
does not support permitting Plaintiff to withdraw the admissions.
In deciding Defendants' motion, the Court only considers the
statute of limitations defense.  The facts underpinning that
defense are so specific and almost assuredly beyond dispute that
relieving Plaintiff from operation of Rule 36 would not further
presentation on the merits at trial.  Defendants, after having
their request for a stay previously denied, acted in accordance
with the Court's scheduling order.[6]  Rule 36 is clear and litigants
who fail to comply with its requirements do so at their own
potentially significant peril.

### V.   CONCLUSION

     For the foregoing reasons, Defendants' Motion for Summary
Judgment [ECF No. 31] is **GRANTED.**  Plaintiff's Motion to Stay [ECF

---

[6] Plaintiff, perhaps accurately, ascribes an opportunistic motive
to Defendants' change of position with respect to a stay of this
matter pending resolution of the PITA litigation in Monongalia
County.  Whether Defendants were aware of Plaintiff's counsel's
other obligations and elected to prey upon that or were otherwise
unwilling to extend the courtesy of seeking joint relief from the
deadlines in effect is of no import here.  The Court had denied a
request for a stay and a motion to dismiss the Complaint.  Then,
following the usual procedure, entered a Scheduling Order after
the parties submitted their Rule 26(f) Report.  No request to
adjust that schedule was made until after Defendants' filed their
summary judgment motion and all parties followed other aspects of
that order, such as pretrial submissions.

Segal v. Dinsmore, et al.                                    1:20-CV-267

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 31] AND ADDRESSING OTHER PENDING MOTIONS**

No. 35] is **DENIED**. Defendants' Motion to Compel [ECF No. 40] is **DENIED AS MOOT**.

Because the Court grants summary judgment to Defendants and no trial is necessary, Defendants' Motions in Limine [ECF Nos. 45, 46 and 47] and Plaintiff's Unopposed Motion to Permit Parties' Remote Attendance at Pretrial Conference [ECF No. 74] are also **DENIED AS MOOT**. Plaintiff's action against Defendants is hereby **DISMISSED WITH PREJUDICE** and the action is retired from the active docket of this Court.

The Clerk is directed to enter judgment in accordance with this Order and to forward this Order to all counsel of record.

**DATED:**    March 31, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA